UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
                                             :

UNITED STATES OF AMERICA          :

   - *v.*-                                     :          17 Cr. 596 (GBD)

TONY MCCLAM                         :

          *Defendant.*             :

------------------------------------- x

### DEFENDANT TONY MCCLAM'S RESPONSE
### IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE*

By and through the undersigned, Defendant Tony McClam respectfully submits this Response in Opposition to the Government's Motions *in Limine*. *See* Doc. No. 132.

### I.    PRELIMINARY STATEMENT

The Government seeks this Court's permission to admit evidence related to prior bad acts involving Mr. McClam pursuant to Federal Rule of Evidence ("Rule") 404(b). Specifically, the Government seeks to admit: (1) evidence relating to a prior stash house conviction in 2019 for conduct involving the residential storage of heroin, fentanyl, and marijuana (in addition to cash and firearms) in 2016; and (2) evidence relating to the search and seizure of heroin and marijuana which occurred in 2019, as a result of July 2018 through February 2019 wiretap activity.[1] *Id.* at 8-13.

There is no permissible purpose for admission of the Rule 404(b) evidence

---

[1] The Government further seeks a ruling barring the Defense from inquiring or otherwise introducing evidence as to incidents involving, respectively, one officer's prior traffic accident, and another officer's prior alleged assault of a civilian. *Id.* at 13-16. At this time, the defense does not intend to cross-examine these witnesses about those incidents/allegations.

relating either to Mr. McClam's prior conviction relating to a 2016 stash house, or to the 2019 wiretap-related conduct, which together concern heroin, fentanyl and marijuana. Nor will either be helpful to the jury's assessment of Mr. McClam's knowledge and intent as concerns the charged New Jersey truck stop transaction of sham cocaine. To the contrary, because the other acts evidence which the Government seeks to admit merely invites the jury to find guilt based on precisely the "once a drug dealer, always a drug dealer" kind of reasoning that Rule 404(b) expressly prohibits, the Government's motion to admit this evidence must be denied. *See U.S. v. Robinson*, No. 17-CR-249 (PAE), 2017 WL 4466616, at *4 (S.D.N.Y. Oct. 5, 2017) (internal quotations and citation omitted); *see also id.* at *2 (finding that, notwithstanding certain similarities between prior crack cocaine distribution offenses and the charged conduct—which also involved an alleged intent to distribute crack cocaine— exclusion of those prior bad acts was required "because it is an abuse of discretion for the trial court to admit other-act evidence if the other act or acts are not sufficiently similar to the conduct at issue") (citing *U.S. v. Gordon*, 987 F.2d 902, 909 (2d Cir. 1993) (internal quotations omitted).

Moreover, as discussed more fully in Mr. McClam's motion *in limine* seeking to preclude this evidence, both prior bad acts are unquestionably and unfairly prejudicial. *See* Doc. No. 133 at 15-19 (explaining that this evidence is prejudicial in several ways, including: (i) because admission of the prior acts would force defense strategy to decide between educating those jurors about the context of those prior cases to mitigate the risk of juror confusion and potentially aggravating the prejudice to Mr. McClam; (ii) because the prior acts involve a conviction, and therefore are more likely to "be received as potent evidence of propensity," *see U.S. v. McCallum*, 584 F.3d 471, 475-76 (2d Cir. 2009) (further discussing how, "[t]he natural and inevitable tendency of the tribunal ... is to give excessive weight to

[prior conviction evidence] and either to allow it to bear too strongly on the present charge or to take the proof of it as justifying a condemnation, irrespective of the accused's guilt […]") (internal quotations and citation omitted); (iii) because the prior conviction may yet be appealed based on, *inter alia*, compelling constitutional questions as to the lawfulness of the search and seizure evidence which the Government seeks to admit here, and admission of the prior acts evidence would require mini-trials as to such questions here; and (iv) because the prior bad acts involve conduct more sensational and disturbing than what is alleged in this case, including the controversial opioid drugs, heroin and fentanyl, and firearms.)[2]

Accordingly, Mr. McClam respectfully requests that this Court deny the Government's motion to admit evidence related to his prior conviction and to the wiretap related conduct.

## II. APPLICABLE LAW & ANALYSIS

There simply is no bright-line rule, as the Government baldly misrepresents, that "evidence of prior narcotics activity is admissible when, as in this case, there is no dispute that the defendant was present at the narcotics transaction in question, but the defendant nevertheless denies engaging in wrongdoing." Doc. No. 132 at 8.

Quite to the contrary, the Second Circuit has instructed unequivocally that "Rule 404(b) does **not** authorize the admission of any and every sort of other-act evidence simply because a defendant proffers an innocent explanation for the charged conduct." *U.S. v. Gordon,* 987 F.2d 902, 908 (2d Cir. 1993) (wherein the defendant denied knowing that the person he went to pick up at the airport was importing cocaine) (emphasis added).

---

[2] Other than conclusorily asserting that the prior bad acts evidence "is not more sensational and disturbing" that the charged cocaine conspiracy, the Government's motion *in limine* does not meaningfully address prejudice. *See* Doc. No. 132 at 12, 15. Accordingly, with respect to the required prejudice/probativeness inquiry and Rule 403, Mr. McClam's response rests on the arguments articulated in his own original *in limine* papers.

3

Even where knowledge and intent is squarely at issue—and Mr. McClam disputes that this is necessarily so here—the case law makes clear that what is key, among other Rule 404(b) strictures, is that there be a "close parallel" between the circumstances of the charged crime and whatever prior acts the Government may seek to admit. *Id.* at 908 (internal quotations and citation omitted) (offering as example another case wherein the conduct involved in the prior offense was "nearly identical" to the charged conduct, and vacating Mr. Gordon's conviction given the inadequate similarities between his prior conviction for cocaine possession, and the charged conduct of importing, conspiring, and possessing cocaine with intent to distribute).

Accordingly, the actual bright line rule—again, even where knowledge and intent are actually in dispute, and they may not be here—is that: "it is an abuse of discretion for the trial court to admit other-act evidence 'if the other act or acts are not sufficiently similar to the conduct at issue.'" *Id.* at 909 (citation omitted).

In this case, as a threshold matter, Mr. McClam does not dispute that he was in a vehicle at the truck stop where the sham cocaine transaction occurred between his co-defendant, Mr. Raymundo Leal, and a government informant to receive a bag of sham drugs. But, to be clear, Mr. McClam vehemently disputes that he participated in this transaction, or in the negotiations which preceded the transaction. He does not concede, for example, that he participated in receiving the bag or that he got out of the Touareg when Mr. Leal got the bag from the Government informant. Indeed, at the suppression hearing in this case, Special Agent McGrath testified that Mr. Leal got out of the Touareg in order to obtain the bag of sham drugs from the informant and that no one else in the Touareg got out of the vehicle. *See* Doc. No. 70, Hearing Transcript ("Tr.") at 17, 59.

More importantly, for purposes of Rule 404(b) analysis, the factual backgrounds

relevant to the prior acts at issue here are starkly different from the charged conduct in this case.

The circumstances of this case concern:

- the trafficking of cocaine from Southern California to New Jersey;

- a transaction of sham cocaine which took place in public, at a New Jersey area truck stop;

- a transaction which involved sham cocaine and money exchanging hands between Mr. McClam's co-defendant and a confidential informant;

- wiretaps and *years* of law enforcement surveillance, much of which documents that the sham cocaine transaction at issue here was negotiated in Spanish.

By contrast, the circumstances relevant to Mr. McClam's 2019 conviction for his involvement with a stash house in 2016 concerned:

- the stashing of cash, firearms, heroin, fentanyl, and marijuana;

- events occurring entirely in Nassau County, New York, within a private residence;

- no actually effected or intercepted planned drug transactions;

- no co-defendants or alleged co-conspirators, and no alleged criminal conspiracy;

- a stash house which was discovered by firefighters reporting to the scene of a fire.

And the July 2018 through February 2019 wiretap conduct which the Government now seeks to admit concerned:

- the seizure of heroin, marijuana, ammunition, and cash;

- activity occurring in and around Roosevelt, New York;

- alleged co-defendants not including Mr. Leal;

- wiretaps which document people speaking in English.

5

Given these important distinctions, the prior acts evidence which the Government seeks to admit here is inadequately similar to survive Rule 404(b) scrutiny (in addition to being unduly and unfairly prejudicial)—whether or not knowledge and intent are squarely disputed in this case.

None of the citations offered by the Government are to the contrary. Indeed, many of the cases on which the Government relies in moving *in limine* quite starkly support the conclusion that the **dis**similar prior act evidence at issue here must be excluded.

The Government's misplaced reliance on *U.S. v. Colon,* 880 F.2d 650 (2d Cir. 1989) is a prime example. *Colon* in no way holds, as the Government's explanatory parenthetical misleadingly characterizes, that "evidence of prior participation in narcotics sales [is] admissible where defendant 'claimed to know nothing about the circumstances leading to the [charged] sale.'" *See* Doc. No. 132 at 9. Instead, *Colon* unremarkably acknowledges that a defense theory which puts knowledge and intent squarely in dispute by conceding a defendant's actual participation in a drug transaction, but contesting his state of mind, may warrant the admission of similar acts evidence pursuant to Rule 404(b). *Colon*, 880 F.2d at 660. However, what *Colon* goes on to explain is clear:

> But Colon, in his amended defense theory, made no similar concession with respect to being connected to the drug transaction. He claimed to know nothing about the circumstances leading to the sale. **In this context, we reject the suggestion that Colon's acknowledgement that he had been on a public street, near his home and place of employment and also in the vicinity of the crime provides a sufficient connection to that crime to justify admission of similar acts evidence**.

*Id*. Based on this reasoning, the Second Circuit *vacated* the conviction of Mr. Colon and remanded the case for a new trial, finding that it had been prejudicial error for the trial court to admit evidence of Mr. Colon's participation in prior heroin sales in the charged heroin transaction case. *Id.* at 662. Certainly, at this stage, Mr. McClam's defense strategy is more akin

to Mr. Colon's—he claims to know nothing about the circumstances leading to the sham cocaine transaction—than to the theory presumed by the Government (that Mr. McClam concedes his participation in the transaction). In this context, the Court should reject the Government's suggestion that Mr. McClam's concession as to being in the car at the truck stop where the transaction happened provides a sufficient connection to the charged offense to justify admission of prior bad acts evidence. *Id.*

But more importantly, even if Mr. McClam's defense strategy could be distinguished from Mr. Colon's and his presence in a vehicle at the truck stop construed as sufficient to put knowledge and intent squarely in dispute, the prior acts at issue here remain too dissimilar to be admitted. Notably, both of the prior acts incidents which came in against Mr. Colon—but which the Second Circuit held should *not* have—involved substantially similar conduct, steering or selling to a purported heroin buyer, in precisely or nearly the same location as the charged conduct. *See id.* at 655 (discussing the similarities between the two prior acts at issue—which involved Mr. Colon either steering heroin or being steered to, on the same block, and an undercover officer—and the charge offense). In fact, the unanimous panel deciding *Colon* repeatedly refers to those prior acts as "similar acts." *See e.g., id.* at 653-4, 656, 658-662. As such, *Colon* offers in *dicta*, had intent been an issue in actual dispute (as it would have been if Mr. Colon had, for example, proceeded with a defense that, by pointing the undercover officer heroin buyer in a certain direction of the block he was innocently directing the officer to a general vicinity and not to a specific person) then, hypothetically, the admission of evidence as to the prior acts may not have amounted to error, "provided the balancing test of Rule 403 was satisfied." *Id.* at 658; *see also id.* at 655.

*Colon* accordingly supports the exclusion of the prior acts evidence that the Government seeks to admit here in several ways. First, as discussed, Mr. McClam's defense

7

theory does not put intent squarely at issue. Mr. McClam is not proceeding with a defense theory that he innocently participated in Mr. Leal's negotiation of and consummation of an albeit sham cocaine transaction—his defense is that he was not a participant in the deal at all. While Mr. McClam concedes he was a passenger in the same car as Mr. Leal, he does not concede—nor has the Government alleged—that he took any affirmative action (such as, to use a *Colon* analog, pointing the purported buyer in Mr. Leal's direction) which furthered the conspiracy. Second, the circumstances of those prior acts are hardly similar to the charged conduct here. The New York, residential storage of heroin, fentanyl, and marijuana (and firearms, ammunition, and cash), is starkly different from a sham cocaine transaction at a public truck stop in New Jersey. Finally, even if knowledge and intent were squarely in dispute in this case, and assuming the prior acts could be construed as sufficiently similar, the prejudice inquiry (left an open question by the Second Circuit in *Colon*) would weigh powerfully against admission, given, *inter alia*, that the prior acts at issue in this case involve opioid drugs (heroin and fentanyl) and firearms and ammunition—circumstances far more controversial and polemic than the charged sham cocaine transaction. *See also* Doc. No. 133 at 15-19 (detailing the ways in which Mr. McClam would be prejudiced by the admission of prior bad acts).

None of the other authorities cited by the Government are significantly more helpful to the Government than *Colon*—which is to say they are not helpful at all. Indeed, many likewise serve, as *Colon* does, to underscore the importance of excluding the prior acts that the Government now seeks to admit. *U.S. v. Peterson,* 808 F.2d 969 (2d Cir. 1987), for example, highlights how critical it is that the prior acts at issue here and the charged conduct are dissimilar. As *Peterson* instructs, the similarities between the prior bad acts and charged conduct must be close enough to allow for a reasonable knowledge or intent inference. "When

8

the other act is unconnected with the offense charged it must be sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge inference advocated by the proponent of the evidence." *Id.* at 974. *Peterson,* a stolen check case, concludes that while both the prior bad act at issue and the charged conduct involved checks, evidence as to a prior check allegedly endorsed by the defendant in someone else's name (an alleged forgery) was insufficiently similar to charges of stealing. *Id.* at 975 (vacating the conviction and observing that such prior act evidence would at best "have only weakly supported an inference" as to knowledge the the charged check was stolen). In the same vein, while the prior bad acts at issue here and the charged conduct all involve drugs, the prior bad acts are insufficiently similar to the New Jersey truck stop transaction to allow any reasonable inference as to Mr. McClam's knowledge or intent.

Two additional cases cited by the Government could as easily have been relied on by the Defense as *Colon* and *Peterson*. *U.S. v. Aminy*, 15 F.3d 258 (2d Cir 1994) affirmed the admission, in a heroin trafficking case, of evidence as to heroin found on the defendant's person at the time of his arrest. *Aminy* likewise hones in on the high degree of similarity between the charged conduct and the heroin possession, not only because both involved the same type of drug, but also in light of expert testimony that the heroin found on Mr. Aminy's person was packaged consistent with a dealer's sample, rather than for personal use. *Id.* at 260; *see also id.* (further distinguishing *Gordon*, 987 F.2d at 906-9, wherein prior acts were excluded, because, in *Gordon*, the narcotics involved in the prior acts "were of different types" than the narcotics involved in the charged conduct). As *Aminy* very clearly and carefully instructs, "[s]imilarity, being a matter of relevancy, is judged by the degree in which the prior act approaches near identity with the elements of the offense charge[d]. There is no necessity for synonymity but there must be *substantial* relevancy." *Id.* at 260 (internal

9

quotations and citation omitted) (emphasis in original). Given the lack of relevancy, much less "*substantial* relevancy" of the prior bad acts and the events at the New Jersey, *Aminy* calls for exclusion here.

And in *U.S. v. Pitre*, 960 F.2d 1112 (2d Cir. 1992) the prior bad acts evidence admitted against the defendants in a heroin distribution case related to prior heroin deals that involved the very same alleged participants of the charged activity. Given the substantially similar circumstances between the prior bad acts and the charges in dispute, the Second Circuit found no abuse of discretion in the trial court's decision to allow in such evidence where it was necessary "to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed." *Id.* at 1119 (internal quotations and citation omitted). Here, by contrast, the Government does not allege that Mr. Leal participated in any of the prior bad acts they seek to admit now (and the Government concedes that "the drugs involved in that other conduct (heroin, fentanyl, marijuana) were different from those involved in this case (cocaine)," *see* Doc. No. 132 at 14. There is no need for the prior bad acts of Mr. McClam to come in to complete any story for the jurors, or to explain the development of relationships between the co-defendants.

The remaining cases cited by the Government in no way undermine Mr. McClam's opposition to the admission of prior bad acts. However, they largely do not offer much by way of factual detail so as to allow for an assessment of the degree of similarity between the admitted prior act evidence and the charged conduct. Still, many of those cases offer clues in any event that there were more similarities than present here. In *U.S. v. Zackson*, 12 F.3d 1178 (2d Cir. 1993), for example, the prior acts evidence at issue involved another drug conspiracy with the same co-conspirator as the charged conduct, thereby rebutting a defendant's innocent association defense. *Id.* at 1182. As discussed, the prior bad acts

evidence here does not involve the same c-conspirators as the charged conduct.

*U.S. v. Rodriguez*, 53 F.3d 545, 546 (2d Cir. 1995) involved a stash house case wherein the defense was that the Defendant did not live in the apartment where guns and drugs were seized, where his wife resided, but instead lived elsewhere with his girlfriend. The Second Court affirmed the trial court's decision to permit evidence of Mr. Rodriguez's role as a supplier to a known drug trafficking organization in the Government's rebuttal case only so as to complete the story to the jury regarding why Mr. Rodriguez may have been motivated to visit that apartment beside his proffered reason (to visit his children). There is no analogous need to "complete the story" here.

In *U.S. v. Fernandez*, 829 F.2d 363 (2d Cir. 1987), the Government alleged that the defendant and his co-defendant had negotiated a marijuana transaction with a Drug Enforcement Agency ("DEA") agent over the phone, and then proceeded to attempt to consummate the transaction. *Id.* at 364. The defendant took the stand and testified that he was merely accompanying his co-defendant to the scene of the attempted transaction and had no stake in the venture. *Id.* at 365. He was then cross-examined about his prior drug negotiations with a DEA agent (the opinion does not identify whether it was the same DEA agent who was involved in the charged crime, or whether the prior negotiations also involved marijuana) and was shown "an official DEA report" while he was on the stand, but "[t]his testimony was later stricken, the report was never admitted nor the jury informed of its contents, and the jury was instructed to disregard the whole line of questioning." *Id.* at 365. Under such circumstances, the Second Circuit concluded that there was no error implicated by the Government's cross-examination, and that there was no conceivable prejudice given the trial court's decision to strike the testimony and instruct the jury to disregard it. *Id.* Obviously, it would be improper to admit testimony as to the prior bad acts against Mr. McClam now if *Fernandez* instructs

11

that the next appropriate step would be to strike that testimony and instruct jurors to disregard it.

*U.S. v. Bruno*, 873.2d 555 (2d Cir. 1989) is inapposite to the extent it likewise involved the permissible scope of the Government's cross-examination of the defendant. In what was a cocaine distribution case, the Government was permitted to ask the defendant if he had ever before possessed cocaine with an intent to distribute. *Id.* at 561. "Because Bruno's initial answer to the government's question was equivocal, the prosecution was entitled to clarify his response with further inquiry." *Id.* at 562 (further observing that the trial court thereafter instructed the Government to "move on," and noting that the trial court's ruling allowing prior bad acts evidence to come through impeachment only, if at all, was appropriately "intended to prevent the government from using extrinsic evidence concerning a prior conviction of [Mr.] Bruno").

In *U.S. v. Arango-Correa*, 851F.2d 54 (2d Cir. 1988), there was no question that the defendants actively participated in the importation of 500 pounds of cocaine from Colombia that had been hidden in rolls of paper. After the DEA installed surveillance technology both in the paper rolls and at the garage address provided on the shipping manifest for delivery, visual surveillance showed both defendants, Mr. Arango-Correa and Mr. Pulido, entering and leaving the garage and being present to accept delivery of the shipment on May 7, 1986. *Id.* at 56. Audio surveillance of the garage contained apparent references to cocaine. *Id.* Lawful searches of the defendants' respective apartments and a vehicle belonging to one defendant turned up slips of paper and notebooks that contained notations about narcotics transactions. While "some of the the notations corresponded to weights and markings on packages of cocaine which were part of the [charged] shipment," other notations were unrelated to that particular shipment. *Id.* at 57. *Arango-Correa* does not indicate whether the

notations on unrelated documents also concerned cocaine, or otherwise similarly corresponded to weights and package markings. However, the trial court concluded that Rule 404(b) permitted admission of all the documents, because all the documents tended to show the defendants' knowledge of the true nature of the charged shipment. *Id.* at 60. The Second Circuit found that the trial court's decision was "entitled to deference." *Id.* By contrast here none of the prior bad acts evidence relates to the charged conduct.

*U.S. v. Martino*, 759 F.2d 998, 1005 (2d Cir. 1985) affirmed the trial court's admission of evidence as to a prior conviction pursuant to Rule 404(b), finding no "clear showing of an abuse of discretion." *Martino,* however, provides woefully limited detail by which to assess the similarities between the evidence of a prior narcotics conviction and the charged conduct (although the court refers to the prior conviction as "similar act" evidence). *Id.* at 1004-05.

And, by summary order, *U.S. v. Gadsen*, 300 F. App'x 108 (2d Cir. 2008) likewise offers minimal detail as to the factual similarities between the prior act evidence admitted and the charged conduct. *Id*. at 110 (finding no abuse of discretion and observing that testimony about prior drug activity "may" be admitted where a defendant offers a "mere presence" defense).

Finally, it must be noted that, of all the authorities cited by the Government, *U.S. v. Hernandez,* 84 F.3d 931 (7th Cir. 1996) is the only case wherein the details provided unequivocally indicate that the admitted prior act evidence involved a different type of drug (marijuana) than the charged offense (cocaine and heroin). However, in both the marijuana case and the charged conduct, the defendant had been acting as a courier, transporting drugs in both instances. Even still, the Seventh Circuit cautioned after finding the other requirements for Rule 404(b) admission were easily met, "[s]imilarity is tougher[.]" *Id.* at 935.

Nevertheless, the Seventh Circuit concluded, "given our deferential standard of review, we concur in the district court's conclusion that the prior conviction was similar enough for 404(b) purposes. Different drugs were involved, but both incidents concerned distribution amounts of drugs and illicit transport." *Id.* at 935.

With respect to this case, similarity is not just "tougher" but insurmountable. Given the high degree of dissimilarity between the charged conduct and the prior offenses which the Government now seeks to admit, as well as the lack of probativeness and weighty prejudice, exclusion of the Government's noticed Rule 404(b) evidence is required.

### III. CONCLUSION

For the foregoing reasons, Mr. McClam respectfully submits that the Government's motion *in limine* should be denied.

Respectfully submitted,

\_\_\_/s/_____

Carine M. Williams
THE LAW OFFICES OF
CARINE M. WILLIAMS, PLLC
29 Broadway, Suite 1412
New York, New York 10004
(212) 653-8321

*Counsel for Tony McClam*

Aaron Mysliwiec
MIEDEL & MYSLIWIEC LLP
80 Broad Street, Suite 1900
New York, New York 10004
(212) 616-3046

*Counsel for Tony McClam*